UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Edwin Robert Hughes,<br><br>    Plaintiff,<br><br>    v.<br><br>St. Mary's University, John Pyle, Kevin Convey, Lyle Abein, Francis Crisman, Haley Links, Cheryl Prentice, Carl Wahstrom, William Kelly, Brian Base, John Moye and Christina Huck.<br><br>    Defendants. | Civil No. 05-1137 (JRT/FLN)<br><br>**REPORT AND RECOMMENDATION** |

Pro Se Plaintiff.
Kurt J. Erickson for Defendants.

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 9, 2005, on Defendants' Motion for Judgment on the Pleadings, and Alternatively, for A More Definite Statement [#30]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, this Court recommends Defendants' Motion for Judgment on the Pleadings [#30] be granted.

**I.  BACKGROUND**

Defendant St. Mary's University is a private university. (Declaration of Linka Holey (hereinafter "Holey Decl.") ¶ 1.) Defendant Linka Holey is the Academic Dean of Defendant St. Mary's University. (Holey Decl. ¶ 1.) On or about September 12, 2001, Plaintiff Edwin Hughes was admitted to St. Mary's University Licensure Program in Education Administration. (Holey Decl. ¶ 2.) After being accepted, Plaintiff began matriculating through the program. (Holey Decl. ¶ 3.) On April 22, 2002, Dr. Kevin Convey, the Program Director, met with Plaintiff to discuss

problems he was having in the licensure program. (Holey Decl. ¶ 3; Ex. B to Holey Decl.) Dr. Convey documented the problems Plaintiff was experiencing and also documented Plaintiff's response to Dr. Convey's suggestions on how to resolve these problems. (Ex. B to Holey Decl.) Specifically Dr. Convey noted that Plaintiff was experiencing some problems writing and some problems with public speaking. (Ex. B to Holey Decl.) In response to Dr. Convey's suggestions regarding the problems Plaintiff was experiencing with the program, Plaintiff "got very angry and started using obscenities and vulgarities saying [Dr. Convey] was forcing him out of the program." (Ex. B to Holey Decl.)

Shortly after this incident, Plaintiff applied to enter St. Mary's Doctoral Program in Leadership. (Holey Decl ¶ 4.) Dr. Convey continued to communicate with Plaintiff about improving his writing skills, his public speaking ability and to request an apology for his conduct during the April 22, 2002, meeting. (Holey Decl. ¶ 5.) Plaintiff eventually agreed to apologize for his conduct and to engage in further classes to address his writing and speaking deficiencies. (Ex. D to Holey Decl.) On July 17, 2002, Plaintiff was notified of his acceptance into St. Mary's Doctoral program in Leadership. (Holey Decl ¶ 6; Ex. D to Holey Decl.)

On September 30, 2002, Plaintiff wrote a letter to Dr. Convey apologizing for the verbal altercation that occurred on April 22, 2002, and also complaining about a grade from Professor Joan Hultman. (Holey Decl. ¶ 7.) St. Mary's addressed Plaintiff's concern by allowing Plaintiff to resubmit work to improve his grade to a "B" level. (Holey Decl. ¶ 8; Ex. G to Holey Decl.) Plaintiff subsequently lodged two separate complaints concerning different grades he received while he attended St. Mary's University. (Holey Decl.¶¶ 9-10.)

In the winter of 2003-2004, Plaintiff voluntarily transferred back to the Licensure program

in Educational Administration from the Doctorate Program in Leadership program at St. Mary's University. (Holey Decl. ¶ 11; Ex. K to Holey Decl.) On or about December 16, 2003, Plaintiff requested a field internship and that request was granted. (Holey Decl. ¶ 11.)

Plaintiff began a field internship at North High School in the City of Minneapolis in January 2004. (Holey Decl. ¶ 12.) Plaintiff worked with North High Assistant Principal Bryan Bass for the duration of his internship. (Holey Decl. ¶ 12.) Mr. Bass is not an employee of St. Mary's University and he is exclusively an employee of the Minneapolis school system. (Holey Decl. ¶ 12.)

On April 7, 2004, Mr. Bass and Plaintiff had an argument which was witnessed by Ms. Tonya Matthews, the Intern Assistant Principal at North High School. (Holey Decl. ¶ 15; Ex. M to Holey Decl.) Both Ms. Matthews and Mr. Bass related to North High School officials that Plaintiff requested to review and complete official documents, including a school survey. (Ex. M and N to Holey Decl.) When Mr. Bass explained to Plaintiff that the school district did not authorize temporary workers or volunteers in the building to complete the survey, Plaintiff reportedly responded by telling Mr. Bass that Mr. Bass did not know what he was talking about and that he was sick of Mr. Bass and his "stuff." (Ex. M and N to Holey Decl.) Mr. Bass responded by immediately following Plaintiff and Mr. Bass issued a verbal request that Plaintiff go with Mr. Bass to his office or Mr. Bass would have no choice but to write up Plaintiff's actions as insubordination. (Ex. N to Holey Decl.) Plaintiff complied and went to Mr. Bass' office. (Ex. N to Holey Decl.) Ms. Matthews then joined the two men in Mr. Bass' office to sit in and support the mediation process. (Ex. M and N to Holey Decl.) Once Ms. Matthews entered she asked to share her observation and concern for the way Plaintiff had behaved. (Ex. N to Holey Decl.) Plaintiff did not respond favorably to Ms. Matthews' observations, and stood up with both of his hands pointing in her

direction and shouted "Shut up, you don't know what you're talking about." (Ex. M and Ex. N to Holey Decl.) At that point Mr. Bass asked Plaintiff to gather his belongings and leave North High School immediately. (Ex. N. to Holey Decl.) Mr. Bass followed Plaintiff to make sure he complied with this request. (Ex. N to Holey Decl.) Plaintiff did not comply, but instead went to the main office and refused to leave until he spoke with another school official. (Ex. N. to Holey Decl.) Mr. Bass then called school security to escort Plaintiff out of the building. (Ex. N. to Holey Decl.) The security officer had to ask Plaintiff twice to leave the building before Plaintiff complied. (Ex. N. to Holey Decl.) While exiting the building Plaintiff reportedly asked Mr. Bass if Mr. Bass wanted to engage in a physical altercation with Plaintiff. (Ex. N to Holey Decl.) Plaintiff then left the premises.

   As a result of this altercation, Plaintiff's internship at North High School was terminated. (Ex. O to Holey Decl.) On May 14, 2004, Plaintiff wrote an e-mail to his advisor at St. Mary's, Mr. Lyle Abeln, complaining about another grade he received in a class taught by Dr. Gratz. (Holey Decl. Ex. Q1.) Mr. Abeln responded by notifying Plaintiff about St. Mary's grade grievance procedure. (Holey Decl. Ex. R.) On May 20, 2004, Dr. Convey wrote to Plaintiff notifying him that he would not endorse Plaintiff for the K-12 licensure and that Plaintiff's enrollment in the Educational Administration Program was terminated. (Holey Decl. Ex. T.) Plaintiff appealed this decision to St. Mary's Vice President John Pyle. (Holey Decl. Ex. Z.) Mr. Pyle upheld Plaintiff's dismissal from the Educational Administration licensure program. (Holey Decl. Ex. Z.) Mr. Pyle informed Plaintiff in a letter dated August 20, 2004, that he had the ability to appeal this decision to a peer review committee. (Holey Decl. Ex. Z.) Plaintiff did not appeal the decision to the peer review committee, and the time period for such an appeal has now expired. (Holey Decl. ¶ 26.)

4

Plaintiff filed the present suit alleging deliberate indifference and racial harassment. (Compl. ¶ 1.) In his suit Plaintiff alleges violations of the United States Constitution and the Minnesota Constitution. (Compl. ¶¶ 2, 4, 5, 6, 7, 9). Plaintiff also alleges a cause of action for defamation and charges discrimination against Defendant St. Mary's University and Defendant Linka Holey. (Compl. ¶¶ 3, 8.) Defendants now move for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12 (c).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 12(c) states that

> [a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

In the present case, in addition to the pleadings, Defendants have submitted to the Court the Declaration of Linka Holey with exhibits A-Z; the Declaration of Kurt J. Erickson with exhibits A-F; and Exhibit AA. Therefore, this motion shall be treated as one for summary judgment pursuant to Federal Rule of Civil Procedure Rule 12(c).

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986). Therefore, summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. For these purposes, a disputed fact is "material" if it must inevitably be resolved and the

resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. Id. at 255. Thus, summary judgment is appropriate when the court has viewed the facts and the inferences drawn from those facts, in a light most favorable to the non-moving party, and found no triable issue. See Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995).

### III. CONCLUSIONS OF LAW

**A. There Is No Genuine Issue of Material Fact As to Plaintiff's Claims Against Defendants' Under the United States Constitution and the Minnesota State Constitution.**

**1. Plaintiff's Claims Against Defendants Under the United States Constitution Should Be Dismissed**

In his complaint, Plaintiff states that Defendants' violated the Equal Protection Clause of the Fourteenth Amendment because Plaintiff was subjected to discrimination on the basis of race, national origin, and religion and that Defendants' failed to take immediate and appropriate actions to correct the situation. Plaintiff also claims that his rights under the First Amendment of the United States Constitution were violated by Defendants. Although Plaintiff does not affirmatively cite to 42 U.S.C. §§ 1983, the Court styles Plaintiff's claims as claims under 42 U.S.C. §§ 1983.

In order for Plaintiff to state a valid claim under 42 U.S.C. §§ 1983, Plaintiff must show that Defendants' were acting under color of state law. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on others grounds by Daniel v. Williams, 474 U.S. 327 (1986). As stated by the Supreme Court in Parratt,

6

> in any § 1983 action the initial inquiry must focus on whether the two essential elements . . . are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Id.

In the present case, St. Mary's University is a private university that is not owned or operated by any branch of any state, local or federal government. Ms. Linka Holey is not an employee of any branch of any state, local, or federal government. Ms. Holey is a private citizen employed by a private university. Since St. Mary's is a private entity and Ms. Holey is not a public employee neither Defendant can be said to operate under the color of state law. Since they are not operating under color of state law, Plaintiff cannot state a claim against either Defendant under 42 U.S.C. §§ 1983.

In addition, Plaintiff's conspiracy claims fail because he failed to plead his conspiracy claims "with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." Nelson v. City of McGehee, 876 F.2d 56, 59 (8th Cir.1989) (quotations omitted). Therefore, Plaintiff does not have a viable constitutional claim against either Defendant, and the claims under the United States Constitution should be dismissed.

    **2.**    **Plaintiff's Claims Under the Minnesota Constitution Fails To State A Cause of Action.**

In his Complaint Plaintiff alleges that Defendants violated Plaintiff's "First Amendment Rights of the Minnesota Constitution Article 1 Section 1." (Compl. ¶ 2.) However, Article 1, Section 1 of the Minnesota Constitution states that the "[g]overnment is instituted for the security, benefit and protection of the people, in whom all political power is inherent, together with the right to alter, modify or reform government whenever required by the public good." This provision does

not state a cause of action, and hence Plaintiff's alleged claims under this provision fail.

Plaintiff also alleges a claim under Article 1, Section 3 of the Minnesota Constitution. Plaintiff claims that Defendants, "through their inaction, not to act upon my formal complaint filed with the University and as a recipient of State and Federal financial assistance are in violation of this law." Article 1, Section 3 of the Minnesota Constitution states "[t]he liberty of the press shall forever remain inviolate, and all persons may freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right." In his complaint Plaintiff fails to allege any actions on the part of Defendants that could possibly be construed as an action by Defendants curtailing Plaintiff's rights under Article 1 Section 3 of the Minnesota Constitution. In addition, a violation of Article 3, Section 1 must involve some form of government action, and in the present case, as described above, neither Defendant is a government actor. See State v. Wicklund, 589 N.W.2d 793, 797-800 (1999). Therefore, Plaintiff cannot state a claim under the Minnesota Constitution.

**B.     Plaintiff's Defamation Claims Fail As A Matter of Law**

In order to prove a defamation claim under Minnesota law, Plaintiff must show that Defendants published or communicated a statement about him to a third person; that the statement was false; and that the statement tended to harm his reputation and lower him in the estimation of the community. Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn.1980). In the present case, Plaintiff's complaint does not specify the alleged defamation that he suffered. Therefore, there is no genuine issue of material fact as to the defamation claim.

**C.     Plaintiff's Claims Under Title VI Fail As A Matter of Law**

Plaintiff makes two of his claims on the basis of "Title VI of the Education Amendments of

1964, 20 U.S.C. §§ 1681-1688." (Compl. ¶¶ 3, 3 [sic].)  However, 20 U.S.C. § 1681 deals with sexual discrimination; § 1682 deals with the federal administrative enforcement of § 1681; § 1683 deals with judicial review of actions taken under § 1682; § 1684 deals with the prohibition of discrimination against blindness or visual impairment;  § 1685 states that the authority of other existing laws are unaffected by this chapter; § 1686 makes it clear that nothing in this enactment prohibits an educational institution from maintaining separate living facilities for different sexes; § 1687 sets out the interpretation of program or activity; and § 1688 states that this chapter is neutral with respect to abortion.  Plaintiff has not stated a valid claim under any of these statutes.

> Plaintiff also claims that Defendants
>
> have discriminated on the basis of race, national origin, religious affiliation by failing to address, prevent, and remedy harassment, intimidation, and in so doing failed to provide the benefits of its educational activities and services to the plaintiff, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. Section 2000d et seq. and its implementing regulation 34 C.F.R., Part 100.

42 U.S.C. § 2000d states "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  Plaintiff also cites to 42 U.S.C. § 2000h-2, which allows the Attorney General of the United States to intervene in certain cases seeking relief from the denial of equal protection.

Plaintiff has not alleged any facts in his complaint showing harassment or discrimination.  Plaintiff has not alleged facts showing a harassing environment or deliberate indifference to racial discrimination or harassment by St. Mary's or its officials.  The actions that St. Mary's took were simply to address their concerns regarding Plaintiff's academic performance.  These facts to do not create a genuine issue of material fact as to whether Plaintiff was the subject of harassment or

9

discrimination. Therefore, Plaintiff's claims under Title VI must be dismissed.

### D.    Plaintiff's Claims Against Defendants Under the Minnesota Human Rights Act Fail As A Matter of Law

Plaintiff also makes additional claims under various provisions of the Minnesota Human Rights Act. Although not cited by Plaintiff, taken together, Minnesota Statute §§ 363A.03(14) and 363A.13 prohibit discrimination in education by a public or private college university. Plaintiff has failed to show any actionable hostile educational environment due to his membership in a protected class. Since Plaintiff has not come forward with any evidence to support his claim of discrimination, there is no genuine issue of material fact as to Plaintiff's claim and the claim must be dismissed.

## IV.    RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Judgment on the Pleadings [#30] be granted.


DATED: January27, 2006                           s/ *Franklin L. Noel*

                                                 FRANKLIN L. NOEL
                                                 United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 15, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **February 15, 2006,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court,

and it is, therefore, not appealable to the Circuit Court of Appeals.